The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is United States v. Martin Gottesfeld, Appeal No. 18-1669, Appeal No. 19-1042, Appeal No. 19-1043, and Appeal No. 19-1107. Attorney Pabian, please introduce yourself on the record and proceed with your argument. Good morning, Your Honors. This is Michael Pabian on behalf of Defendant Martin Gottesfeld. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. May it please the Court. The Government's Speedy Trial Act argument in this case is a truly novel one. This Court has expressly declined to decide whether active plea negotiations are grounds for an ends-of-justice continuance under the statute, and that issue is currently the subject of a circuit split. But here, the Government isn't just asking this Court to take a position on the circuit split. It's asking for you to go a step further and hold that a stall in plea negotiations, resulting from the District Court's delay in deciding a routine detention motion, justifies a continuance. Crucially, in this case, the District Court had explicit notice that plea discussions were not active when the continuances at issue were granted. For that magistrate judge issues her decision, the parties will resume their discussions. The Government, to its credit, admits this point at page 19 of its brief. Moreover, the record reflects no consideration of the mandatory factors set forth in the statute, and indeed, the Court made no specific findings at all. To hold that this record supports an ends-of-justice continuance would be to render the 30-day exclusion for matters under advisement largely meaningless. It would also be contrary to the statutory provision that, quote, general congestion of the Court's calendar, end quote, is impermissible grounds for a continuance. As this Court has emphasized in the Barnes case, the discretion to grant an ends-of-justice continuance is exceedingly narrow. Here, we submit that the record simply does not reflect any valid basis for the continuances and that reversal is therefore required. Now, the Government will no doubt argue that the defense in this case is centered to the exclusions at issue. It's important to keep in mind that the Speedy Trial Act presents a unique context, implicating the public interest as well as the interests of the purposes, quote, cut against exclusion on the grounds of mere consent or waiver, and indeed, the Court continued to note that the statute, quote, has no provision excluding periods of delay during which a defendant waives application of the Act, and it is apparent from the terms of the Act that this omission was a considered one. This Court has similarly stated in Barnes that irrespective of a defendant's agreement or consent, quote, whether time resulting from a continuance may toll the Act depends on whether the Court abused its discretion by granting the continuance. Now, the exception to this general rule is the narrow doctrine of judicial estoppel. That doctrine applies, quote, when a litigant is playing fast and loose with courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage. That's from this Court's AER decision cited in our briefs. No active manipulation occurred here, just passive assent to motions filed by the Government in the miscellaneous business docket. Mr. Gottsfeld could not force the Court to decide the detention issue any more quickly than it chose to. His desire to have a ruling prior to recommencing plea negotiations did not relieve the District Court of its obligation to decide the issue within 30 days or to justify a longer delay per the terms of the statute. Unlike the only Speedy Trial Act case where this Court has found estoppel under Zedner, and that's the Pakala case, Mr. Gottsfeld did not predicate for a statutorily authorized exclusion of delay could be established. Instead, the motions filed by the Government set forth a facially insufficient factual predicate, and we submit that the Court abused its discretion by adopting that factual predicate. Mr. Papian, isn't it in the interest of the public to facilitate plea negotiations? Yes, Your Honor, it is in some circumstances in the interest of the public. It would appear here to also be in the interest of the defendant as well. Oftentimes it is. However, I would say setting aside the issue that's now the subject of the circuit split, which is whether plea negotiations that are active and ongoing may support an ends of justice continuance, I think it's pretty clear on this record that's not what happened here. What happened here is the District Court delayed in making a ruling without making any of the statutorily required findings regarding complexity or the other factors that may support delay, and for that reason, the plea negotiations stalled. We think that an ends of justice continuance in that circumstance is not consistent with the statutory purposes, and in fact is inconsistent with the plain language of the statute, saying that general congestion is not sufficient. What is the difference between what you call a stalled negotiation and an ongoing negotiation, neither of which have reached impasse? Well, I see Your Honor's point that there can be a continuum there, but the fact is that the record, in this case, in the motions that were filed and granted in the District Court, made clear that the negotiations were suspended. This was not a situation in which there was an exchange of information between the parties and there was some delay in one party getting information to the other. In those circumstances, the public interest may well be served by granting a continuance, but here the only information that the parties were waiting for was a decision by the court, and again, under the terms of the statute, the Speed Trial Act required the court to decide that motion within 30 days or to make findings that justify a longer delay. We don't think that the mere fact of the delay and the corresponding stall in plea negotiations is enough under the statute. I don't quite understand. I thought the motion isn't connected necessarily to the determination on detention. In other words, the parties are saying, we want a delay because the detention determination is important to our plea negotiations. I think that's pretty clear from the record, and the court made a finding on that. Yes, Your Honor, so you're right that that's what the motion said. The motion essentially said that we don't want to continue these negotiations until we have a decision on the detention ruling. So it seems to me then that what you're really arguing is that the court needed to explain why it was taking the length of time it was taking to decide the detention motions. Yes, the detention motion. That's really what the complaint is about, and to me that doesn't make a lot of sense. I'm working on a detention motion, but I'm required to give you an interim report about why it's taking exactly the length of time that it's taking. I don't know why we would burden a court with that kind of detailed explanation, but you tell me why. Yes, so to be clear, Your Honor, we're not proposing any sort of requirement like that. What we're saying is that the statute says that there are 30 days granted for an exclusion for the Speedy Trial Act when a motion is taken under advisement. Now, Your Honor is right that there are certainly circumstances in which more than 30 days may be required to decide a motion under advisement, and that's why we have the ends of justice provision and the possibility of an ends of justice exclusion. But the ends of justice provision lays out a series of mandatory factors, for instance, the complexity of the case, the need for continuity of counsel that the court is to consider in deciding whether or not to grant a continuance. So, for instance, in Your Honor's hypothetical, if the court determined that the issues presented by the detention motion were just so complex that they could not be decided within 30 days, it could have so ruled and so found under the ends of justice provision, but that's not what it did here. Instead, it simply adopted, based on the government's own argument in this appeal, it adopted the grounds put forward by the parties. And the grounds put forward in the government motion here was simply that the court hadn't decided the detention motion and that the parties were waiting for a decision. We think that if that is enough to support an ends of justice continuance, it would essentially eat away at the express provision in the statute, the general congestion of the court is not enough for a continuance. Well, would it? Because we can, we know what the motion was that was pending. We know what the record was on that. And so it would be relatively easy to distinguish that in which we'd say it's plausible that it would take longer to decide from, you know, a routine motion for two day extension to file a brief where we would say, well, it's not obvious there that it would be. So can't we tell from the nature of the motion itself? Well, your honor, I think the problem with that logic is that the step of the statute and the Supreme Court precedent in Zedner require express findings. Now this court has given a little leeway in that regard to the courts and said, when a party comes in and files a motion, setting forth the basis for a continuance in some circumstances, this court will find that those bases were simply adopted when the court granted the motion. But we don't think that there's any authority for this court to go outside of any of the filings or any of the implicit or express findings by the district court and essentially create an after the fact justification for the continuance. We don't think that the statute allows that. So again, in these circumstances, any assent did not relieve the judge of her express statutory obligation to make principle findings sufficient to support the continuances. We also submit that if a defendant cannot raise a speedy trial act challenge in these circumstances, baseless continuances that run contrary to both the terms and the purposes of the statute would be insulated from review by this court. Unless the court has any further questions, I'd like to move on and address the public trial argument. You have two minutes. As the Sixth Circuit has eloquently stated in a different context, democracies die behind closed doors. That's part of the reason that we have a public trial right in criminal cases. The watchful eye of the public is thought to ensure fairness to defendants and to prevent abuses of power. Whether the public trial right applies in this context is an open issue. It's not yet been decided by this court, and counsel has been unable to locate any out-of-circuit precedent squarely deciding the issue. In short, it's a novel question that is preserved and ripe for decision. Now, of course, the court need not This court has found that the right to a public trial applies to certain pre-trial proceedings like jury selection. That's in Owens 483 F3 48 and Augusto Vega 617 F3 541. What do you say about ex parte? Certainly there can be ex parte proceedings in a case, and if you accept that, doesn't it necessarily follow that you can't have the public there for the ex parte proceeding? Well, we're not saying that there can never be ex parte proceedings or non-public proceedings, even for this kind of motion. I think the key is that a ruling that the public trial right applies in this context would not invariably require open proceedings. There could still be a closure so long as it's supported by specific findings of necessity, and we think that that's something that was clearly lacking on this record. Well, isn't the fact that it's ex parte necessarily enough? Well, I think that that would require findings of necessity for the ex parte hearing. Why do you require a finding of necessity if we say if it's an ex parte proceeding that's enough? Well, I think I would disagree with that. It wouldn't be ex parte if the public were allowed in. Yes, but I think what the case law requires is that if the public is not going to be permitted into the hearing, whether it's ex parte or not, the court must make findings that support that closure. The findings could be made ex parte. There's nothing that says they can't be, but findings are required and were not made here. Let's say we were to agree with you on that point. I'm not saying we do, but let's say we were. Why isn't it enough to say what the judge here said, which is it would not be appropriate for government counsel to be in a proceeding of this nature? If it's not appropriate for government counsel to be there, it can't possibly be appropriate to run the risk that government counsel would find out what was being said. What's wrong with that logic? Your Honor, I think I would submit that the logic put forth by the district court was somewhat conclusory, that it's not appropriate for the government to be present. I think that begs the question, why? In here, we submit that there was no compelling basis for the closure, principally because Mr. Gospel waived any concerns about pre-trial publicity for attorney-client privilege by expressly requesting the public hearings. The right to a public trial is so fundamental in our criminal justice system, and the stakes are so very high for defendants in these proceedings, especially where, as here, the defendant himself opposed some of the requests for withdrawal. Judge Leach, did you have a question? Yes. Mr. Pavian, help me a bit with the record on this issue. As I understood it, the matter we are discussing is a motion by your clients, then counsel, to withdraw, and that counsel himself had no objection to the matter being ex parte and the government attorney not being there. In fact, one could guess he would think it was entirely appropriate. I understand that it was your client, pro se, who made some objection. Is that correct? It's correct in part, Your Honor. You're correct that the attorney did express his personal willingness to close the courtroom, but on several occasions, the objection by Mr. Gospel was rather relayed through his counsel. The counsel essentially said that Mr. Gospel objects. Okay. I had a little difficulty understanding precisely the nature of the objection. It seemed to be not to the exclusion of government counsel, but to the fact that a member of the press who was there, I believe with your client's wife, was asked to leave when the government attorney and any members of the public were asked to leave. I'm just trying to understand. Does the record show the specificity of the objection that was made? I believe it does, Your Honor. The government claims that there is some ambiguity with regard to the first two closures, but even in one of those hearings, as we noted in our brief, Mr. Gospel expressly advised that his concern was ensuring that the proceedings were public. With respect to the three final closures, we believe that Mr. Gospel's objection was very clearly to the exclusion of the public and not just to the exclusion of the government. If I'm following the logic of the argument that's being made, the public is to be there, including the press, but government counsel is to be excluded? Not necessarily, Your Honor. Mr. Gospel, I believe, objected to the closure of the courtroom entirely. He objected to excluding the government or excluding the public. Yeah, I'm going to Judge Howard's insight. Closing the courtroom is one thing. Having an ex parte hearing wherever it is held is a somewhat different thing. Normally, in ex parte hearings in criminal cases where the government is being excluded, it is done precisely to protect the interests of the defendant. Are we agreed on that? Oftentimes, it is, Your Honor. I think the key point to keep in mind here is that the court did more than hold an ex parte hearing. The court did expressly exclude members of the public, including, in one case, a journalist. Okay, I have it now. Thank you. That was very helpful. Thank you, Your Honor. Did I miss something in the blue brief? Is there an appeal based on the fact that the government was excluded? There is not, Your Honor. The issue that we've raised is a public closure issue, and that's what I was just trying to express in response to the judgment. For our purpose of our appeal, it's a given that the government was excluded, that this was an ex parte proceeding. The issue is, when you have an ex parte proceeding, can you necessarily exclude the public? Yes, Your Honor. Frame it a little differently and can you exclude the public without making any of the required findings of necessity that are laid out in the case law of the Supreme Court and of this court? Does the court have additional questions of counsel? No, thank you. Thank you, Your Honor. You've reserved some time. Mr. Sinha? Good morning, Your Honors. May it please the court, Javier Sinha on behalf of the United States. Starting first with the speedy trial arguments, the record here shows that the parties were engaged in negotiations. Those negotiations had sort of stalled because of the detention decision. It's hard to understand the distinction between active and passive negotiations, or active and non-active negotiations, because there's so many factors that go into a defendant's decision to plead guilty or not to plead guilty. And I'll just point out that the defendant's decision to plead guilty or not is sort of a sacred, vital decision, and the speedy trial act was not designed to rush a defendant to make that decision or to force a defendant to make that decision without all the information he or she needs to decide that. Counsel has raised some arguments here, I think for the first time, either raised in the reply brief for the first time or not raised below. I don't think the circuit split is at issue here. I also think the required findings under subsection D of H7 are not at issue here, it wasn't raised below. And there's no evidence in the record that general congestion caused the delay in this case for the detention decision. It was a contested detention decision. There was a witness, there was exhibits, there was testimony across examination. It resulted in a 22-page detention order. And so there's no, I don't think there's any evidence in the record that it was caused by congestion of the court's calendar. Defense counsel mentioned Zedner. Mr. Sinhat, it was rather a long time to decide the detention motion compared with most cases, but this was a very complicated case. How long after the hearing and the taking of evidence was the decision rendered? It took three months, Your Honor, to the day. And were there, I'm sorry, were there credibility findings made? I don't think there were. I think there was only one witness and the court found him credible. I don't know if that was made explicit or not in the order, but the court used his testimony to decide the motion. Okay. There's a little sort of reversal of field here, isn't there? I mean, I assume your position below was that given the prior flight, detention was a slam dunk. We believe that detention should have been ordered and we're happy with the results that it was. And now, and the other side, probably their position was that it wasn't a slam dunk, but now on appeal, your position is, well, this was somewhat complex, so it took three months. And the other side is saying it should have been done faster. I think our position is simply that there's no evidence that it was the congestion of the court's calendar that caused the delay. It could have been the complexity of the motion. It could have been something else, but I just don't think this court could find that the congestion of the court's calendar caused whatever the delay was in this case. I also want to, I pointed out earlier, I think that question wasn't raised below and I don't think it was raised in the opening brief in this case. I also want to point out a defendant's argument about Gardisfeld's passive assent in this case. I think that mischaracterizes the record. The parties in the courts clearly understood these motions for continuances to be requests of both parties. And in fact, the parties filed a joint motion, excuse me, a joint notice on the NBD, which is NBD docket 15, that refers to the continuance motions as the party's requests. And so I think the parties in the courts both saw these requests as sort of joint requests. And so I don't know if this is a passive assent of the way defense counsel has suggested in this court. Mr. Sinha, although it wasn't orally argued to us, it is quite lucidly argued in the briefs that the use of the miscellaneous business docket rather than the criminal docket raises some of its own concerns. And the defendant argues it would have been very easy just to use the docket of the criminal complaint that was issued and was pending before the magistrate judge rather than the miscellaneous docket of the court. That left me wondering why was it not done that way? Why was it done on the miscellaneous business docket? And what interest of the public is served by having it done on the miscellaneous business docket? So the motions are filed in that docket because the district plan for the speedy trial requires that these motions be filed there. Local rules also suggest that any motions regarding grand jury secrecy that would need to be secret because the grand jury is involved should be filed in the miscellaneous business docket. And so the government followed the district plan by filing it in that docket. The main benefit from the use of the docket is that it's a sealed docket and so it keeps grand jury secrecy. So for example, if the government has to delay indictment because a certain witness couldn't come to the grand jury, that wouldn't be public information. It also has the benefit of giving the defendant a district court judge on the first instance rather than a magistrate motion that then has to be appealed to a district court judge. Those are the main reasons why the docket was used. I imagine there might also be, in addition to the grand jury and the expedition points you just made, there might be some benefit to defendants in keeping this information from indictment. Absolutely right, your honor. I think it's absolutely correct. If there are no more questions on the Speedy Trial Act, I'll move on to the public trial. Our main argument is that the public trial right does not apply to these sort of hearings because they are ex parte, non-adversarial hearings where the closure of the court is defendant's benefit. And this court has held that essentially when a hearing does not implicate the four factors discussed in Waller, which we cite in our brief, the public trial right does not extend to that sort of pre-trial hearing. Your honor's point is well taken that if the right does extend to that hearing, a finding that this must be an ex parte hearing because the government shouldn't be allowed to be listening to these discussions would satisfy a Sixth Amendment right in this case as well. Some argument has been made that the defendant had no problem with the government being there, which normally I would expect would mean the government would have stayed there. The government didn't stay there, so presumably it thought it wasn't supposed to be there? So the district court ordered the government to leave. The government took no position on whether the court should be closed or open. In two of the hearings, the government stayed and the court said you can stay, but for most of the hearings issued in this part of the appeal, the government was told to leave by the district court. The defendant, of course, had no problem with anybody staying. He wanted the proceedings to be wide open the entire time. As your honor's mentioned, closing these hearings or holding them ex parte is for the defendant's benefit. It also helps the defendant avoid acting pro se without representation, discussing privilege information with counsel. The counsel has a duty to maintain the attorney-client relationship, not to speak candidly to the court, not to prejudice the defendant into the public or to the judge. These are all things that a defendant would want and that are for his benefit. Mr. Sinatz, it's a little unclear to me what the government's position is on the rule of decision that we should apply. One option is if it is ex parte by definition, it's not subject to the no, you look at the Barker factors and if they are not involved, then it's not a public matter. Your opponent has suggested that adopting a rule that any hearing said to be ex parte would be a neat way of avoiding the Barker factors and just ending any examination of the question at that point. Does the government have a position on this question? I'm sorry, there is a third option, which is if it involves a disqualification of defense counsel on the grounds asserted here, that that type of hearing is itself excluded from the public trial right. So I'm sorry, go ahead and answer. The way the court has handled this is to look at the four Waller factors, look at the proceeding at issue in this case and determine whether or not those factors are implicated here. And so I think the court could say either in this specific case, the Waller factors were not implicated. I think courts have generally said, and this court has generally said, at least in Brown and Bucci and Vasquez-Botet, that the type of hearing is not covered. And so the rule of decision I think would be that these types of hearings do not implicate the four factors of Waller and so these types of hearings are not covered by the right. Suppose the motion to disqualify was from paid counsel, not court-appointed counsel, and he said, I'm not being paid, judge. I want to get out of the case. Should that be closed to the public? It doesn't need to be. I think the factors I mentioned for closure are sort of protecting the privilege, protecting attorney-client confidences, maintaining the attorney-client relationship aren't really implicated in those kinds of hearings. And so I think it's important to remember that a decision that the public trial right does not apply does not mean that these hearings must always be closed or always be open. A district court judge can look at the motion filed and the facts in that particular case and decide to keep this one open or this one closed depending on what the facts are. And so if there's no risk of, I think, client confidences or attorney-client privilege or anything like that, then I think there's no need to close the hearing. So if a paid counsel says, I'm not being paid, that could be open. I don't think... You know, your opponent would jump all over the statement you just made. There was no need to close the hearings. It isn't the defendant who is faced with the test of whether there's any need to close the hearings. Presumptively, hearings are public and open to the public and there has to be some good reason to close them. It's true, Your Honor. I think in this case, there were very good reasons. As I mentioned, an attorney has a duty of candor to the court, which he can't completely fulfill if he's worried about speaking in public. An attorney has a duty to protect client privileges and confidences. The attorney has a duty not to disclose to the government any attorney, or excuse me, defense tactics or strategy or ideas. So here, there are certainly good reasons to hold this as an ex parte hearing without the public. So I don't want to give the impression that, in this case, there is no reason to close. I think there could be cases where a court, if the right doesn't apply here, could have them open, but I don't think this is one of those cases, certainly. And I don't think the right applies here because of that. Your Honors, I'm happy to discuss any points raised in the briefs, but if there are no more questions, we would rest on our briefs. Thank you. All right. Thank you. Mr. Pabian, anything further? Yes, Your Honor. I think it's important to keep in mind that the Speedy Trial Act puts the obligation squarely on the court to justify an ends of justice continuance on the record. And here, contrary to the government's oral argument, we submit that there was no ambiguity as for the reason for the continuance, and I point Your Honors to page 19 of the government's brief for that proposition. Absent findings of necessity required under the statute, the record reflects no reason other than the court's congestion and delay for the continuances in this case. We submit that that's fatal to the government's case under the Speedy Trial Act. Briefly, with respect to the public trial issue, the government continues to argue that the closure was for the defendant's benefit, but the attorney-client privilege is the defendant's right to waive. That's very clear. And Mr. Gottsfeld, in this case, was ready and willing to waive that. Now, irrespective of the hypotheticals that we discussed about ex parte hearings, it's important to keep in mind that the issue that we've raised and the issue we're arguing about is a public trial issue. The government conceded just now that not all of the hearings were held ex parte, but all five of the hearings were cited involved exclusions of members of the public. Those exclusions required findings under the precedence of this court and Supreme Court. And it certainly is the case, as counsel just said, that the court could have held the proceedings in confidence. But in order to do that, he was required to make specific findings of necessity on the record, something that the government does not contend was done here and which we submit was not done here pretty clearly. So unless your honors have any questions, I'll conclude my argument. Thank you, counsel. Thank you. That concludes argument in this case. Attorney Pabian and Attorney Sinha, you should disconnect from the hearing at this time.